J. W. MENEFEE, *Plaintiff in Error*, v. THE STATE OF FLORIDA, *Defendant in Error.*

1. Error, if any in acting upon motions to quash and for a bill of particulars and upon the legal sufficiency of pleas in abatement in the absence of the accused in felonies not capital, is cured by an order for the resubmission of these matters in his presence.

2. A plea in abatement that three of the grand jurors were not on the list as made out and recorded by the County Commissioners, is defective in not negativing other legal methods of securing jurors.

3. Upon trial for larceny of fertilizer, it may be shown that the accused, who was not in that business but had access to that of his employer, sought out a customer.

4. To prove possession of goods by a railroad company, on trial for larceny, a private receipt purported to be signed "J. H. T., per F. M. G. (?)" is not competent evidence upon testimony that the witness knew T's handwriting and that T. was the agent of the railroad company.

5. One serving a term in the State's prison for forgery and against whom other unnamed indictments are pending is not an approver and incompetent as a witness against one being tried for larceny.

6. The court is not required to give the affirmative charge in criminal cases.

7. A general verdict of guilty on a count charging grand larceny is not fatally defective in form and will support a conviction for grand larceny.

This case was decided by the court En Banc.

Writ of error to the Circuit Court for Lake County.

The facts in the case are stated in the opinion of the court.

*J. H. Jones,* for Plaintiff in Error;

*Park Trammell,* Attorney General, for the State.

COCKRELL, J.—An indictment was found in the Circuit Court for Lake County against J. W. Menefee consisting of three counts, in the first he was charged with the larceny of "thirty-five sacks of fertilizer, a more particular description of which is to the grand jurors unknown, of the value of three dollars per sack, of the total value of one hundred and five dollars" of the property of the Atlantic Coast Line Railroad Company a corporation, in the second he is charged with the embezzlement of the fertilizer, and in the third count the property was laid in W. F. Bozeman. He was found guilty and sentenced under the first count.

The transcript is in great confusion, being brought up

under the rules provided for civil cases, but we are able to glean the following facts: A plea of not guilty was by consent of the court withdrawn and the defendant interposed by counsel motions to quash, and for a bill of particulars, and also a plea in abatement, all of which were overruled or held bad, and all or some of which were argued and acted upon while the defendant was not personally present. Immediately upon the attention of the judge being called to this absence he had him brought into court, rescinded all he had done and ordered. The defendant and his counsel were given the opportunity to present anew the matters with full opportunity for argument and his rulings were again made denying the motions and sustaining a demurrer to the plea.

In the Adams case, 28 Fla. 511, text 555, 10 South. Rep. 106, this court emphasized the important duty, in capital cases, resting upon the trial court of seeing that the accused is personally present at all proceedings in the cause, that he might hear what was being said, and we think the same care should be observed in all trials for felony, but we did not say that the failure to do so would result in a reversal, and in that case the proceedings were in the midst of the actual trial. Suppose we should admit that one accused of felony has an absolute right to be present at the argument of the purely legal points involved in these motions and demurrers had in advance of trials of fact, what are we asked to do or what could we do more than was done? The same Judge who has passed upon these matters twice, we might by our reversal order to pass upon them again. Surely this would be the height of technicality and cannot be tolerated. Upon the authority of what was said in Williams (R) v. State, 42 Fla. 210, it may well be doubted if the right to be present exists.

There is no merit in the motions or in the plea in abate-

ment.   The indictment is sufficiently definite to apprise the accused of the offense charged, nor do we see either from the face of the first count or from the evidence any occasion for a bill of particulars.

The plea in abatement sets up that three of the grand jurors were not on the list made out by the county commissioners and recorded in their minutes.   Such pleas are strictly construed and must answer all supposable cases.   Taylor v. State, 49 Fla. 69, 38 South. Rep. 380; Colson v. State, 51 Fla. 19, and Thomas v. State, 58 Fla. 122.   For aught that appears in the plea the judge may have exercised his power to get the grand jury from the body of the county or otherwise, and it does not appear that these jurors were in anywise incompetent.

The testimony tended to show that Menefee who had a subordinate position with the railroad company at Leesburg, furnished fertilizer of a peculiar grade and manufacture to one Griffith living near that town upon an agreement to share the crop between them and that Menefee was not in the fertilizer business.   It was competent for the State to show that Menefee sought out this farmer and made the proposition.

An attempt to prove a shipment of 240 sacks of this fertilizer from the factory in Gainesville to its agents Bozeman at Leesburg was made through J. F. Bunch, the president of the fertilizer company.   It is evident that he testified as to facts not within his own knowledge and the shipping clerk was not called as a witness, nor does any one testify as to actual knowledge of the shipment, nor were the books of original entry adduced. Over strenuous objections there was erroneously admitted in evidence what purports to be a receipt of the railroad company for the particular shipment.   The receipt is signed "J. H. Tench, per F. M. G. (?)" and was admitted upon the testimony of Bunch that Tench was

the agent of the railroad company at Gainesville, that he was familiar with the handwriting of Tench and that the signature was in his writing. While it is, of course, physically possible for one to so sign his name, yet it is so out of the ordinary as to call for explanation, without which the court should not have admitted the paper. The evidence without this complication is upon the border-line of admissibility, and the State may well consider if there be not accessible more direct proof.

J. W. Jolly was brought, under charge of a deputy sheriff, to testify for the State, while serving a term in the State's prison for the crime of forgery, against whom there was pending indictments for other crimes, the nature of which is not disclosed. It was moved to strike his testimony upon the ground that he was a convict and an accomplice. These facts however go only to his credibility, not competency. It is suggested here that he is an approver and as such not a competent witness under General Statutes, Section 3975. That section has been considered and defined by this court in Sumpter v. State, 11 Fla., 247, and even the most casual reading of that decision will show that Jolly is not an approver, and within its condemnation.

We find further deserving detailed discussion upon the evidence. The zeal of counsel has caused him to assign and argue about sixty errors, but we should not be expected to answer them *seriatim*. We have examined them all and find them untenable, or such as will not arise on a new trial.

The court is not required to give the affirmative charge in criminal cases and the demurrer to evidence sought to be interposed here was so defective as to amount to nothing.

Many assignments are based upon the refusal to charge upon theories calling for an acquittal upon the embezzle-

ment count. The acquittal upon this count renders any discussion needless.

We find no special difficulty with the charge of the court nor with its refusal to give requested instructions.

The remaining point, covered by various assignments, is as to the form of the verdict, the contentions being that it is indefinite and that it is a verdict only of petit larceny. The verdict is, "we, the jury find the defendant guilty on the first count—so say we all." No motion in arrest was directed to the form of the verdict, and its form is hardly presented to us. We are not controlled by statute as in verdicts under indictments for murder, and the general rule as to certainty in verdicts obtain in cases of larceny and embezzlement. The verdict is referred to and read in the light of the indictment; the indictment charges larceny of property exceeding twenty dollars, the dividing line between grand and petit larceny, and there is no question that the property involved largely exceeded that amount, the jury were told that the count was not made out unless the property stolen exceeded twenty dollars, and there can be no reasonable doubt that the jury intended to and did find as charged in the first count that the property stolen was of the value requisite to make out the crime of grand larceny. This ruling is in line with our previous holdings and with the weight of authority in those States not governed by specific statutes. 2 Bishop's New Crim. Proc. Chap. 764; See Long et al. v. State, 42 Fla., 509.

The judgment is reversed and a new trial granted.

All concur, except TAYLOR, J., absent on account of illness.